UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONTRELL LATTIMORE,

    Plaintiff,

    v.

WAYNE COUNTY JAIL ADMINISTRATOR,
NURSE COLEMAN, NURSE JONES, NURSE
MOORE, NURSE JANE DOE #1, NURSE JANE
DOE #2, DETROIT POLICE OFFICER BRENT
RODAK, DETROIT POLICE OFFICER ERICA
JACKSON, DETROIT POLICY SERGEANT
GERALDINE YOUNG, DETROIT POLICE
OFFICER JOHN DOE #1, and DETROIT POLICE
OFFICER JOHN DOE #2,

    Defendants.

CASE NO. 2:10-CV-14171
CHIEF JUDGE GERALD E. ROSEN
MAGISTRATE JUDGE PAUL KOMIVES

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (docket #20 and #23)

I.    RECOMMENDATION: The Court should grant defendants' motions for summary judgment.

II.    REPORT:

A.    *Background*

Plaintiff Contrell Lattimore, currently a state prisoner, commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 193 on October 19, 2010. Defendants are the Wayne County Jail Administrator and jail nurses Coleman, Jones, Moore, Major, and Jane Does (the "Jail defendants"); and Detroit Police Sergeant Geraldine Young and Police Officers Brent Rodak, Erica Jackson, and John Does (the "Police defendants"). Plaintiff alleges that both the Police defendants and the Jail defendants were deliberately indifferent to his medical needs following his arrest on November 9, 2009, in violation of the Eighth and Fourteenth Amendments. Generally, plaintiff alleges that the

Police defendants delayed medical treatment on his finger following his arrest until the finger could be photographed for evidentiary purposes, and that the Jail defendants failed to provide him with appropriate follow-up care.

More specifically, plaintiff testified in his deposition that on the evening of November 9, 2009, after he had done some renovation work on a home, he took his dog Rocky for a walk. Two stray dogs attacked Rocky. Plaintiff joined the fray to defend Rocky, suffering a bite to his left ring finger. The stray dogs eventually fled, but plaintiff's finger was fractured and bleeding badly as a result of the bite. *See* Police Def.s' Mot., Ex. 1, Dep. Tr. of Contrell Lattimore, at 66-70 [hereinafter "Pl.'s Dep."]. Plaintiff went to Henry Ford Hospital to have the wound treated, but left rather than wait for treatment. *See id*. at 72-73. Plaintiff then called a friend, LaTanya, to take him to a different hospital. On the way, he stopped at a drug store to purchase gauze to wrap his finger, and then returned to plaintiff's home to pick up his identification. Upon arriving home, two Detroit Police Department vehicles were waiting for him, and ordered him out of the vehicle. While placing plaintiff under arrest and handcuffing him, the officers observed plaintiff's bloody finger. After waiting in the police car for about 10 minutes, defendant Rodak and another officer transported plaintiff to Detroit Receiving Hospital, with lights and sirens activated. *See id*. at 75-88. Once at the hospital, plaintiff was taken to a waiting area, where he was examined by hospital staff. The officers reported that the wound was the result of a human bite, but plaintiff reported that it was the result of a dog bite. *See id*. at 87-90. After waiting approximately 20 minutes, a nurse came to clean the wound. She was stopped by defendants Rodak and Jackson, who wanted the wound to remain undisturbed until it could be photographed for evidentiary purposes. After a short delay, defendant Young arrived and photographed the wound. Hospital staff treated the wound thereafter. *See id*. at 91-92. According to plaintiff, approximately 30 minutes elapsed between his arrival at Detroit Receiving Hospital and

the time hospital staff began treating the wound. *See id.* at 97. Plaintiff claims that he experienced pain and discomfort during this period of time, but concedes that he did not suffer any greater physical damage to his finger as a result of the delay. *See id.* at 97. After his initial treatment, plaintiff was admitted to the hospital, where he underwent surgery to have a pin placed in his finger. He was released on November 11 to the custody of the police, who took him to be arraigned on charges of assault with intent to commit murder and unlawful imprisonment. Plaintiff was then transferred to the custody of the Wayne County Jail. *See id.* at 100-01, 104-05, 117-18.[1]

A follow-up appointment at the hospital was originally scheduled for December 23, 2009. In accordance with security protocols, that appointment was adjourned because plaintiff knew of the date and time of that appointment. *See id.* at 118-19. Plaintiff testified that he wrote several kites to defendant Major, complaining of pain and seeking removal of the pin, because he was told by the doctor who inserted the pin that it was only supposed to remain in his finger for six weeks. *See id.* at 119-21. Defendant Major told him that "[n]othing will be done because it didn't happen in the jail." *Id.* at 121; *see id.* at 120-22. With respect to defendants Coleman and Moore, plaintiff testified that defendant Coleman constantly walked away and ignored him when he tried to make her aware of the situation involving his finger, and that defendant Moore did nothing for his finger but give him gauze and peroxide. *See id.* at 122-23. Plaintiff's testimony and the Jail medical records establish that plaintiff saw a nurse and was given an initial health assessment on November 13, 2009. *See* Pl.'s Dep., at 124; Jail Def.s' Mot., Ex. B, Wayne County Jail Medical Records, at 15-16 [hereinafter "Jail

---

[1] The charges against plaintiff alleged that he, along with a codefendant, beat Caurice Burse. *See* Pl.'s Dep., at 106-10. Plaintiff was eventually convicted on those charges. The evidence presented against plaintiff at his criminal trial was summarized by the Michigan Court of Appeals in its decision affirming petitioner's conviction. *See Peolple v. Lattimore*, No. 298155, 2011 WL 6785964, at *1 (Mich. Ct. App. Dec. 27, 2011) (per curiam), *leave to appeal denied*, 2012 WL 2400762 (Mich. June 25, 2012).

Med. Rec."]. Plaintiff was seen again on November 28, 2009, by both a nurse and a doctor. The doctor discussed treatment with plaintiff, gave him 800mg of Motrin, and wrote prescriptions for Motrin and Keflex. *See* Pl.'s Dep., at 125; Jail Med. Rec., at 2, 8. Plaintiff was also scheduled for an x-ray and an orthopaedic appointment. *See* Jail Med. Rec., at 2. The finger was x-rayed on November 30, 2009; the x-ray revealed that plaintiff's fracture was "well aligned" and that there was "a single pin in place." *Id*. at 3. Following a request for medical services relating to pain in his feet, plaintiff was scheduled for an orthopaedic consultation on December 16, 2009, but refused to attend the appointment. *See id*. at 9, 11. Although plaintiff was scheduled for an orthopaedic consultation on April 21, 2010, he was transferred to the custody of the Michigan Department of Corrections on April 20, following his conviction. The pin was removed on May 20, 2010, while plaintiff was in the custody of the MDOC. *See* Pl.'s Mot. to Accept Medical Records (MDOC medical records).

The matter is currently before the Court on defendants' two motions for summary judgment. First, on September 30, 2011, the Police defendants filed a motion for summary judgment arguing that plaintiff cannot show that they were deliberately indifferent to his serious medical needs by delaying his treatment for 30 minutes so that the wound could be photographed. Second, on October 13, 2011, the Jail defendants filed their own motion for summary judgment, also arguing that plaintiff cannot show that they were deliberately indifferent to his serious medical needs, and additionally that they are entitled to qualified immunity. Plaintiff filed separate responses to the motions on November 2, 2011, as well as the medical records reflecting his treatment while in the custody of the MDOC.

B.   *Legal Standards*

    1.   *Summary Judgment*

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also*, FED. R. CIV. P. 56(c)(1) (moving party may meet its burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).  To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue.  As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

    2.    *Medical Claims Under § 1983*

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege, or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). Thus, "[t]he first step in any such claim is to identify the specific constitutional [or statutory] right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality op.); *see also*, *Graham v. Connor*, 490 U.S. 386, 394 (1989). Here, Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986). The

Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103). The subjective prong asks whether the officials acted with a sufficiently culpable

7

state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id*. at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id*. at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiff's claims that defendants denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996). Importantly, however, "a complaint that a physician has been negligent in diagnosing or treating a

8

medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Because the Eighth Amendment is concerned only with punishment imposed by the State after a prisoner has been convicted through the criminal process, it is not applicable where, as here, a pretrial detainee complains of the conditions of confinement. *See Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). Rather, a pretrial detainee is protected by the Fourteenth Amendment's Due Process Clause. *See id*. Nevertheless, "[w]hile the Eighth Amendment does not apply to pre-trial detainees, the Due Process Clause of the Fourteenth Amendment does provide them with a right to adequate medical treatment that is analogous to prisoners' rights under the Eighth Amendment." *Gray v. City of Detroit*, 399 F.3d 612, 615-16 (6th Cir.2005); *accord Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009); *Blackmore v. Kalamazoo County*, 390 F.3d 880, 895 (6th Cir. 2004). Thus, the deliberate indifference standard discussed above governs plaintiff's claims.

Finally, it is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant."

*Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

C.  *Analysis*

    1.  *Police Defendants*

With respect to the Police defendants, the Court should conclude that there are no genuine issues of material fact, and that defendants are entitled to summary judgment as a matter of law. By plaintiff's own account, upon seeing his injury at the time of arrest, the officers immediately transported plaintiff to the hospital, employing lights and sirens and driving fast. The Police defendants also allowed plaintiff to be examined by medical staff upon arriving at the hospital. These actions belie any claim that the officers were deliberately indifferent to any serious medical need. Plaintiff alleges only that the officers delayed his treatment for approximately 30 minutes so that pictures could be taken of his finger, because they had reason to believe that the wound was caused by a human bite and that the wound therefore may have had evidentiary value with respect to the criminal charges against petitioner. This alone is insufficient to establish that the officers were deliberately indifferent to his serious medical needs.

There is no evidence in the record that plaintiff's condition required immediate, emergency

treatment. "[A] pretrial detainee 'who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Vaughn v. City of Lebanon*, 18 Fed. Appx. 252, 274 (6th Cir. 2001) (quoting *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001)); *see also*, *id*. ("In examining whether a claimed injury is 'sufficiently serious,' courts look to the *effect* of any delay in medical treatment caused by an officer's inaction."). Not only has plaintiff failed to present any evidence that he suffered any harm as a result of the short delay in treatment caused by the officers, plaintiff himself admitted that he suffered no such harm. *See* Pl.'s Dep., at 97. "While subjective feelings of pain may, if sufficiently egregious, satisfy the objective component of *Farmer*, the record in this case does not support such a finding." *Vaughn*, 18 Fed. Appx. at 275. There is no evidence that plaintiff was in severe or disabling pain, and plaintiff does not claim that he was in such pain. A short delay in providing stitches or treating a broken finger does not, by itself, implicate a serious medical need. *See Andujar v. Rodriguez*, 486 F.3d 1199, (11th Cir. 2007) (paramedics who cleaned and dressed plaintiff's dog bite wounds and then released him to police custody without stitching wounds or transporting him to hospital were not deliberately indifferent; delay of two hours in receiving stitches necessary to accomplish booking process was tolerable); *Russo v. Beaton*, 234 Fed. Appx. 725, 726 (9th Cir. 2007) (delay in treating broken finger sustained during arrest did not amount to deliberate indifference); *Hubbard v. Gross*, 199 Fed. Appx. 433, 438 (6th Cir. 2006) (two hour delay in treating arrestee's broken hand failed to establish objective component of deliberate indifference claim); Further, plaintiff's assertion that the short delay in treatment amounted to deliberate indifference to a serious medical need is belied by plaintiff's own actions. Plaintiff testified that he initially sought treatment at a hospital before his arrest, but left because he didn't want to wait for treatment. *See id*. at 72-74. He also testified that when he left, he

11

did not immediately go to another hospital, but rather went to a friend's house, called another friend to pick him up to drive to the hospital, went to a drug store to purchase gauze, and returned to his home to pick up his identification. *See id.* at 75-77. Plaintiff's "own admitted delay in seeking medical treatment for himself belies any claim of urgency or extreme pain." *Felmine v. City of New York*, No. 09-CV-3768, 2011 WL 4543268, at *21 (E.D.N.Y. Sept. 29, 2011); *cf. Vaughn*, 18 Fed. Appx. at 275 (granting defendants summary judgment on plaintiff's claim that they were deliberately indifferent in failing to provide treatment following use of pepper spray to which he claimed he was allergic, where on prior occasions in which plaintiff had been pepper-sprayed he did not seek medical attention, in part because the plaintiff's "own inaction after several of the encounters seriously calls into question any assertion that a delay caused by defendants resulted in a Due Process violation."). In light of this evidence, the Court should conclude that the Police defendants are entitled to summary judgment.

        2.     *Jail Defendants*

Plaintiff likewise cannot show that the Jail defendants were deliberately indifferent to his serious medical needs. Plaintiff concedes, and the Jail medical records show, that plaintiff was given pain medication during his detention at the Jail. He was also scheduled for an orthopaedic appointment, and had an X-ray taken of the finger. *See* Pl.'s Dep., at 124-Jail Med. Rec., at 2-3. Plaintiff contends that the doctor at DRH who inserted the pin told him that it was temporary, and should be removed in six weeks, however no medical evidence in the record supports this claim. *See* Pl.'s Dep., at 131 (acknowledging that plaintiff had no medical records reflecting doctors' statements to him about the need for the pin to be removed). Further, plaintiff conceded that he never filed a grievance seeking medical attention for his finger. *See id.* at 127. The medical records establish that plaintiff received medication for his pain, and that an X-ray had shown the finger to be well aligned

12

and the pin in place. There is nothing in the record to suggest that the defendants named by plaintiff, the Jail Administrator and three nurses, knew or should have known that it was necessary to remove the pin at any specific time. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas,* 537 F.2d 857, 860-61 n.5 (6th Cir. 1976); *see Estelle*, 429 U.S. at 107; *id.* at 105-06 (allegations of "an inadvertent failure to provide medical care . . . [or of] negligen[ce] in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). In these circumstances, plaintiff cannot show that the named defendants were deliberately indifferent to his serious medical needs.

D.      *Conclusion*

In view of the foregoing, the Court should conclude that plaintiff has failed to raise a genuine issue of material fact with respect to whether the Police defendants or the Jail defendants were deliberately indifferent to his serious medical needs. Accordingly, the Court should grant the defendants' motions for summary judgment.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

    Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/Paul J. Komives
                                              PAUL J. KOMIVES
                                              UNITED STATES MAGISTRATE JUDGE
Dated: 7/13/12

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on July 13, 2012.
>
>                             s/Eddrey Butts
>                             Case Manager